### W. C. BELCHER LAND MORTGAGE CO. v. TAYLOR et al.   (No. 62–2801.)

(Commission of Appeals of Texas, Section A. June 11, 1919.)

1. HOMESTEAD ⬤➙146 — EXECUTION OF DEED IN TRUST—RIGHTS OF CHILDREN.

Surviving wife, tenant in common of homestead with her children, to save it from threatened foreclosure of vendor's lien, had the right to extend time of payment of purchase-money note by making new note to third party who took over purchase-money notes from vendor, and to execute deed in trust binding her interest and that of the children in the homestead to secure such note.

2. SUBROGATION ⬤➙23(6)—PAYMENT OF PURCHASE MONEY—SUBROGATION TO VENDOR'S RIGHT TO LIEN.

One who pays purchase price of homestead subject to vendor's lien, or part thereof, on behalf of purchaser under agreement with the purchaser that vendor's lien shall be retained as security for the money advanced, is entitled to be subrogated to vendor's rights to such lien, and where amount advanced is in excess of that secured by vendor's lien, he is subrogated to the extent of the amount of the lien.

3. MORTGAGES ⬤➙335 — DEED IN TRUST — AMOUNT IN EXCESS OF INDEBTEDNESS.

A sale made under a deed of trust for a sum larger than the amount with which the property is properly chargeable is not void, and a power of sale in such deed can be exercised if any part of the debt is due and owing.

4. HOMESTEAD ⬤➙96—SALE UNDER DEED IN TRUST—AMOUNT—EXCESS OF INDEBTEDNESS.

Where time of payment of purchase money for homestead was extended by execution of deed in trust of homestead to secure note to third party who took over purchase-money notes from vendor, a sale under the deed in trust was valid, notwithstanding that note to third party was in excess of the amount of indebtedness secured by vendor's lien.

5. HOMESTEAD ⬤➙146 — EXECUTION OF DEED IN TRUST BY SURVIVING WIFE—PRESERVATION OF SEPARATE ESTATE.

Surviving wife had the right to bind her interest in homestead by deed of trust for pur-

pose of extending time for payment of purchase price, under Rev. St. 1879, art. 2854, in force at such time, though she had remarried at time of execution of deed in trust; the transaction being to preserve her separate estate and being merely a change in the form of the indebtedness, and not the creation of a debt.

**6. ACKNOWLEDGMENT ⊗══20(1)—DISQUALIFICATION — AGENT — VALIDITY OF ACKNOWLEDGMENT.**

Acknowledgment of deed in trust executed by surviving wife to secure note to third party who had taken over purchase-money notes from vendor taken by agent of surviving wife and vendor, who had no interest in the instrument or its consideration, but only in the transaction by way of commission from the vendor for negotiating the notes, was not void.

**7. MORTGAGES ⊗══350—SALE UNDER DEED IN TRUST—PLACE OF SALE—APPLICABILITY OF STATUTE.**

Under Act of March 21, 1889 (Rev. St. 1911, art. 3759), a sale of property under deed of trust executed prior to enactment of such act was not required to be made in county in which property was situated, although time for payment had been extended after act had taken effect; the mortgage continuing notwithstanding extension agreements.

**8. MORTGAGES ⊗══305 — DISCHARGE OF MORTGAGE—CHANGE IN FORM OF INDEBTEDNESS.**

A mere change in the form of indebtedness will not discharge the mortgage or deed in trust, the mortgage continuing so long as the debt it is given to secure subsists, since it secures the debt. and not the note or other evidence of the debt.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by Mahala Taylor and others against the W. C. Belcher Land Mortgage Company. Judgment for plaintiffs was affirmed by Court of Civil Appeals (173 S. W. 278), and defendant brings error. Judgment of Court of Civil Appeals reversed, and judgment rendered for defendant.

Wm. J. Berne, of Ft. Worth, for plaintiff in error.

Fowler & Fowler, of Bastrop, for defendants in error.

SONFIELD, P. J. In the year 1882 Charles H. Glover purchased certain land in Bastrop county from John Wilkes, executing for the purchase money several promissory notes, two of which were in the sum of $300 each, due respectively on or before October 15, 1887 and 1889, with interest at the rate of 10 per cent. after maturity, and providing that they might be liquidated in cotton at 10 cents per pound. Upon the purchase Glover and his wife moved upon the land, residing thereon and occupying it as their homestead until Glover's death; his wife continuing to so use the same as her homestead to the date of the trial. No lien was retained upon the land in either the deed to Glover or the notes. Glover died intestate in March, 1884, leaving surviving him his wife and six minor children, aged from one to eleven years. In November, 1886, the surviving wife married H. M. Taylor. Thereafter, on November 26, 1887, the first of the two notes hereinabove mentioned having become due, and payment being insisted upon, and neither the Taylors nor the minor children of Mahala Taylor, former wife of Glover, having the money with which to pay same, and having no property other than their homestead, they made application to the W. C. Belcher Land Mortgage Company to take up and extend said notes, which was granted. Wilkes transferred the notes to the Belcher Company. The transfer, as found by the Court of Civil Appeals, was not intended as a sale, but was for the purpose of subrogating the company to the rights of Wilkes under said notes. Taylor and wife wrote upon said notes their acknowledgment that they were just debts, promising to pay the same at the expiration of five years in accordance with their note of that day, and executed their note of even date in the sum of $600, payable to the Belcher Company, with interest at the rate of 7 per cent. per annum payable semiannually, reciting that it was given for the unpaid portions of a just and subsisting original purchase-money debt, and secures and perpetuates all of the original vendor's rights, remedies, and liens. At the same time the Taylors executed a deed in trust to said land to Horace H. Cobb, trustee, to secure the payment of said note, reciting therein that it was to secure plaintiff in error in the payment of a just and subsisting original purchase-money debt, subrogating the company to the vendor's lien and continuing same to secure said note. The deed provided that in case of default the land could be sold at the courthouse door in Travis county upon notice posted for ten days on the courthouse door of said county, and that, in the event of the failure or refusal of the trustee to act, such sale should be made by the acting sheriff of Travis county as substitute trustee.

The application of the Taylors to the Belcher Company for the loan was the result of the following negotiations: Wilkes, the payee, employed R. P. Jones to negotiate or sell the notes. Jones approached S. M. Smith, a broker, with request that he find a purchaser. Smith took up the matter with the Belcher Company. The company declined to purchase the notes, because they were payable in cotton and on or before a given date, but expressed a willingness to take up and extend the notes for a period of five years. Smith informed Jones that the notes could be thus extended, and Jones, who also rep-

resented the Taylors, agreed thereto. Thereupon the application was made, and Smith was employed by the Belcher Company to inspect and report upon the value of the land, which he did. Wilkes had stated to Taylor that he would take $500 for the notes. Upon the due execution of the instruments consummating the extension, the Belcher Company paid the sum of $585, of which sum Wilkes received $500, Smith, $60, and Jones, $25.

H. M. Taylor having died, Mahala Taylor, his widow, on September 22, 1893, obtained from the Belcher Company a five-year extension of the $600 note and like extensions on October 10, 1898, and October 1, 1903. The last extension having expired and the $600 note being due and unpaid, and the said Cobb having refused to act as trustee, the sheriff of Travis county, at the request of the Belcher Company, advertised and sold the land as provided in the deed in trust. The Belcher Company became the purchaser, paying therefor the sum of $875, and the sheriff executed and delivered to the company a deed thereto.

This action was in trespass to try title and for cancellation of the deed in trust and the deed executed by the sheriff. Trial was had by the court without a jury, and judgment rendered for defendants in error. On appeal the Court of Civil Appeals affirmed the judgment of the district court. 173 S. W. 278.

[1] At the date of the execution of the note and deed in trust, the property in its entirety was subject to the vendor's lien. Mrs. Taylor, as tenant in common with her children, in order to protect her interest, as well as that of her children, and save the property from threatened foreclosure, had the right to extend the time of payment of the debt, and to this end was authorized to execute a deed in trust binding her interest, though homestead, and also the interest of her children. If, as held by the Court of Civil Appeals, the note to the Belcher Company was in an amount in excess of the indebtedness secured by the vendor's lien, this would not render the note and deed in trust void.

[2] The rule is familiar and well settled that one paying on behalf of another the purchase price of land or part thereof, a lien thereon existing in favor of the vendor, is entitled to be subrogated thereto, where the payment is made under agreement with the vendee and upon an understanding, express or implied, that the lien shall be retained as security for the money advanced; and, where the amount advanced is in excess of that secured by the vendor's lien, the party is subrogated to the extent of the amount of the lien. This doctrine is as applicable to the homestead as to other property. Hicks v. Morris, 57 Tex. 658; Tex. Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12; Pridgen v. Warn. 79 Tex. 588, 15 S. W. 559; Hensel v. Building & Loan Ass'n, 85 Tex. 215, 20 S. W. 116; Flynt v. Taylor, 100 Tex. 60, 93 S. W. 423; Dixon v. National Loan & Investment Co., 40 S. W. 541.

[3] A sale made under a deed in trust for a sum larger than the amount with which the property is properly chargeable is not void, and a power of sale in such deed can be exercised if any part of the debt is due and owing. Groesbeeck v. Crow, 85 Tex. 200, 20 S. W. 49; Hemphill v. Watson, 60 Tex. 679; Word v. Colley, 143 S. W. 257; Vaughn v. Mutual Building Ass'n, 36 S. W. 1013.

[4] The amount of the indebtedness secured by the vendor's lien was included in the note secured by the deed in trust, and, the same being due and payable, and default made in its payment, a sale was authorized under the deed in trust. Mere excess, if any, in the amount of the note does not affect the validity of the sale.

[5] The note and deed in trust, though executed by Mrs. Taylor while a married woman, bound her and her interest in the property; the same being her separate estate. The loan was negotiated for the purpose of preserving this separate estate. To the extent of the then existing indebtedness, it was not the creation of a debt, but a mere change in the form of the indebtedness. Thereby the vendor's lien was not extinguished, but expressly continued, and the Belcher Company was subrogated to the rights of the vendor thereunder. To the extent of the existing indebtedness, the contract, being for the benefit of her separate estate, was authorized under article 2854, R. S. 1879, then in force. Blair v. Teel, 152 S. W. 878.

The deed in trust involved the homestead and separate property of a married woman. The acknowledgment thereto was made before R. P. Jones, who, as found by the Court of Civil Appeals, had a pecuniary interest in the transaction to the extent of his commissions of $25. Was Jones thereby disqualified from taking the acknowledgment, and the instrument therefore void?

The Court of Civil Appeals found that Jones was acting as the agent of Wilkes, the payee of the notes, and of the Taylors, and Smith, as broker and agent for both the Taylors and the Belcher Company. The undisputed facts with reference to the agency of Jones and Smith establish that, in the negotiations looking to the sale of the notes, Jones represented Wilkes, the payee; in the taking up and extension of the notes, he represented the Taylors. Jones in no manner represented the Belcher Company, nor had he any negotiations with the company. Smith represented the Taylors through Jones in these negotiations, and represented the Belcher Company in inspecting and reporting upon the value of the land. Wilkes paid Taylor a commission of $25. Wilkes was

anxious to dispose of the notes. The Taylors were willing that they be taken up, substituted, and time of payment extended. The interests of Wilkes and the Taylors were not adverse or conflicting.

The cases cited by the Court of Civil Appeals as sustaining the view that Jones was disqualified to take the acknowledgment of the Taylors determine: That a party to a deed or mortgage is incompetent to take the acknowledgment to its execution (Brown v. Moore, 38 Tex. 645; Rothschild v. Daugher, 85 Tex. 332, 20 S. W. 142, 16 L. R. A. 719, 34 Am. St. Rep. 811), that one who identifies himself with a transaction, evidenced by a written instrument, by placing his name on the face of the same as an agent for one of the parties thereto, is disqualified from taking the acknowledgment of any of the parties to the instrument (Sample v. Irwin, 45 Tex. 567); that an officer is disqualified from taking the acknowledgment of a married woman to a mechanic's lien in favor of a corporation of which such officer is a stockholder (Miles v. Kelley, 16 Tex. Civ. App. 147, 40 S. W. 599).

It is generally held that one having a direct pecuniary interest in the consideration of an instrument, or in upholding such instrument after its execution, is disqualified from taking the acknowledgment thereto. 1 C. J. 804.

[6] Jones was not a party to the instrument, nor does his name appear upon its face as an agent of any party thereto. He was the agent of the Taylors and Wilkes. Wilkes was not a party, nor in any manner concerned, in the deed in trust. Jones had no interest in or under the deed in trust, in the consideration therefor, or in upholding the same after its execution. Kutch v. Holley, 77 Tex. 220, 14 S. W. 32. He had an interest in the transaction to the extent that he would receive, not from the Belcher Company, but from Wilkes, the sum of $25 as commissions. This amount was to be paid him by the payee of the notes for their negotiation, not by the Belcher Company, for securing the execution of the deed in trust. It is true that the notes would not have been negotiated but for the execution of the instrument, and Jones therefore had an indirect interest in its execution. This was, however, an interest in the transaction, and not in the instrument or its consideration. It cannot be held that this character of interest rendered his act void. It is of utmost importance that the officer taking an acknowledgment be disinterested in order to impartial action toward the parties to the instrument. It is likewise important, as a matter of public policy, that verity be given the certificate of acknowledgment. To hold that an indirect interest of this character, in the absence of proof of fraud, bad faith, undue advantage, or improper conduct, renders void the instrument so executed by a married woman, would be productive of injurious consequences in many cases, and would tend to destroy confidence in instruments executed by married women. Were it in evidence that Jones was to receive compensation from the Belcher Company, a different question would be presented.

The trial court held the sale under the deed in trust void because made in Travis county under the provision of the trust deed, and not in Bastrop county, where the land was situate, as provided by the act of March 21, 1889, being article 3759, R. S. 1911. The Court of Civil Appeals did not pass upon this question.

[7] Without reference to the extension agreements, it is undoubted that the sale was properly made in Travis county. It has been definitely settled that the act of 1889 does not affect deeds in trust executed prior to its enactment, and the power of sale in such deeds must be exercised as provided therein. International, etc., Ass'n v. Hardy, 86 Tex. 610, 26 S. W. 497, 24 L. R. A. 284, 40 Am. St. Rep. 870; Thompson v. Cobb, 95 Tex. 140, 65 S. W. 1090, 93 Am. St. Rep. 820. The question to be determined is: Did the extension agreements destroy the power to sell in Travis county as provided in the trust deed? We think not.

[8] A mortgage or deed in trust secures the debt, not the note or other evidence of the debt. Hence no mere change in the form of the indebtedness will discharge the lien; the mortgage continuing so long as the debt it is given to secure subsists, unless discharged by a valid agreement between the parties. Wilcox v. National Bank, 93 Tex. 322, 55 S. W. 317; Wright v. Wooters, 46 Tex. 380.

Extensions of time of payment were not made through renewal notes, nor by the execution of new deeds in trust, but by agreements in writing and by the execution of interest notes or coupons. Each of the extension contracts provided that in all respects save as expressly modified by the contract the note and deed in trust and all the terms and conditions thereof should remain in full force and effect. The only modification or change through such contracts was as to the time of payment.

The extension contracts did not create a debt or lien; they continued the original obligation and the lien securing same, postponing the date of payment. Default being made in the payment of the original note, a sale in Travis county, as provided in the deed in trust, was authorized.

We conclude that the deed in trust was in all things valid, binding not only the interest of Mrs. Taylor, but also that of her children, and that the sale thereunder passed the title to the Belcher Company.

We are of opinion that the judgment of the Court of Civil Appeals affirming the judg-

ment of the district court should be reversed, and judgment here rendered for the defendant.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes